E-Filed 12/4/15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER BROOKSBANK,<br><br>   Plaintiff,<br><br>  v.<br><br>PRIVATE CAPITAL GROUP, LLC,<br><br>   Defendant. | Case No. 13-cv-02667-HRL<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 92 |

  Plaintiff Heather Brooksbank ("Brooksbank") sues Defendant Private Capital Group, LLC ("PCG") for breach of a written contract. Brooksbank argues that a letter she received from PCG in 2009 was a contractual offer to participate in a short-sale program, that she formed a contract by accepting the offer, and that PCG breached the contract by foreclosing on Brooksbank's home. The parties have expressly consented to magistrate jurisdiction. PCG moves for summary judgment.

**Background**

  Brooksbank raised claims for breach of contract and fraud in her first amended complaint. Dkt. No. 46. Brooksbank conceded in a brief opposing a motion to dismiss that an oral-contract theory is time-barred. Dkt. No. 50 at 10. The court dismissed the fraud claim because Brooksbank had simply alleged that the acts which constituted a breach of contract were also fraudulent; under California law the mere breach of a contract, without more, cannot support a fraud claim. Dkt. No. 56 at 5-6. Brooksbank had been represented by counsel when these issues were resolved, but the court granted an unopposed motion for her counsel to withdraw due to material disagreements with Brooksbank about case strategy. Dkt. No. 68. In the following 18 months Brooksbank did not seek leave to amend the first amended complaint. Brooksbank therefore proceeds with this case, pro se, solely on a claim that a written contract has been formed

1 and breached.

2     PCG filed its motion for summary judgment in September of 2015. PCG supports the motion with public records and with requests for admission to which Brooksbank did not respond. PCG raises several independent arguments: (1) PCG's initial letter was an invitation to deal, not an offer; (2) Brooksbank has waived her oral-contract theory, but no signed writing satisfies the statute of frauds; (3) even if the court construes the letter as an offer, Brooksbank never qualified for conditional terms described in the letter; (4) even if the court concludes that a contract was formed, Brooksbank never performed according to the terms of the purported contract; and (5) Brooksbank may not bring any claims based on the foreclosure of her home because she must first tender the full amount that was due on her defaulted loan. Brooksbank, in violation of Civil Local Rule 7-3, failed to file either an opposition brief or a statement of non-opposition. Instead, Brooksbank filed an untimely letter that asked the court to "not rule on [PCG]'s Motion for Summary Judgment without first allowing [her] to be heard." Dkt. No. 97 at 1.

14     The court heard arguments from PCG and Brooksbank on October 27, 2015. The undersigned asked Brooksbank why she did not respond to the requests for admission or the motion for summary judgment. Brooksbank answered that it had been difficult to understand the papers she had received. The undersigned asked Brooksbank whether she had consulted with the free, court-sponsored Federal Pro Se Program when she received those papers; Brooksbank answered that the program's attorney has provided legal advice to her in the past, but that she had not asked him for advice since April or May of 2015 because personal problems had made it difficult for her to focus on the case.

22     Brooksbank argued that, prior to the foreclosure PCG obtained in 2009, PCG had also judicially foreclosed on her home in 2008 through state-court proceedings in New York and without any notice to Brooksbank. She claimed that therefore PCG had committed fraud in 2009 when it formed a contract with her that related to an ownership interest PCG had already secretly extinguished in 2008. Brooksbank focused throughout the hearing on her new factual claim about a judicial foreclosure in New York. Brooksbank offered to hand documentary evidence to the undersigned, which she said would prove her new factual claim. Brooksbank also asserted that

2

1   she had put some money into an escrow account, that PCG fraudulently seized that money when it
2   foreclosed on her home in 2009, and that the Roundpoint Mortgage Servicing Corp. had
3   committed fraud while working with PCG. Brooksbank also considered it suspicious and
4   improper that PCG sent a lawyer she did not know to the oral argument.

5   The undersigned advised Brooksbank that her old fraud claim had already been dismissed,
6   that it was improper to raise new allegations of fraud 18 months later during a hearing on a motion
7   for summary judgment, and that the present hearing was about whether or not summary judgment
8   should be entered against her on the remaining breach-of-contract claim. Brooksbank nevertheless
9   remained focused on her new allegations of fraud throughout the hearing and spent little time
10  discussing her breach-of-contract claim. The undersigned repeatedly asked Brooksbank to clarify
11  why her new allegations of fraud might matter to the breach-of-contract claim; Brooksbank
12  eventually responded that the breach-of-contract claim only makes sense to her as an extension of
13  fraudulent acts committed by PCG, and that therefore one claim cannot exist without the other.

14  PCG argued that Brooksbank's new arguments and factual claims are not relevant to the
15  motion for summary judgment, that Brooksbank had admitted to all of the material facts by failing
16  to respond to PCG's requests for admission, and that it would be procedurally improper and unfair
17  if the court accepted untimely new evidence that Brooksbank had mentioned for the first time
18  during the hearing. PCG offered, as conjecture, the possibility that Brooksbank had been confused
19  by a transfer of ownership in her loan, which may have occurred during a third party's bankruptcy
20  proceedings in New York.

21  The undersigned did not accept the unauthenticated and untimely documents offered by
22  Brooksbank during the hearing. The court shall not, in this order on PCG's motion, entertain new
23  and procedurally improper allegations of fraud raised by Brooksbank during the hearing. The
24  court now addresses whether to grant the motion for summary judgment.

25  **Legal Standard**

26  A motion for summary judgment should be granted if there is no genuine issue of material
27  fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);
28  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial

burden of showing the basis for the motion and identifying the portions of pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden then shifts to the non-moving party to produce evidence supporting its claims or defenses. *Id.* The non-moving party may not rest upon more allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of material fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248-49.

**Discussion**

As a preliminary matter, the court addresses the argument that no claim related to a foreclosure may be raised by a borrower until she tenders all the money that was due on the loan. PCG relies upon cases that hold a court sitting in equity should not void a voidable trustee's sale until the borrower tenders the money that was due. *E.g., Karlsen v. American Sav. & Loan Assn.*, 15 Cal. App. 3d 112, 116 (1971). The court does not read these cases to deprive litigants of any other remedy in any other situation. For instance, Brooksbank seeks damages for a trustee's sale that allegedly breached a related contract—she does not claim that the sale is voidable and should be voided. Dkt. No. 46 at 6. The court rejects the argument that a borrower must tender the full amount that was due on an underlying loan before she may raise any claims related to a foreclosure.

The court next addresses whether PCG is entitled to summary judgment on Brooksbank's breach-of-contract claim for lack of sufficient evidence to support the contract-formation element of that claim. "An essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270-71 (2001) (citing Cal. Civ. Code §§

4

1550(2), 1565(2)). "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Id.* at 270-71. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it. The determination of whether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances. The objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication is made had reason to believe that it was intended as an offer." *Id.* at 271.

The court previously ruled that the breach-of-contract claim would not be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Brooksbank "had adequately alleged that it was objectively reasonable for her to believe that the letter constituted an offer[.]" Dkt. No. 56 at 4. The court also noted, however, that the letter was ambiguous and that "whether [the letter] was an offer or merely an invitation to discuss alternatives to foreclosure . . . will ultimately depend on the surrounding factual circumstances." *Id.* Brooksbank has failed, however, to provide the court with evidence about the surrounding factual circumstances. The letter's equivocal language—the recipient is "invite[d] to consider [a] short sale program" for which they "may qualify" and the recipient should contact PCG "to discuss the program" and "to explore alternatives"—cannot reasonably and objectively be interpreted as a contractual offer unless contextual facts modify the plain meaning of the letter. Dkt. No. 92-1 at 63. PCG has correctly called attention to the fact that Brooksbank cannot carry her burden of persuasion at trial on the material issue of whether the letter was a contractual offer, Dkt. No. 92 at 2, and therefore PCG's motion for summary judgment is granted.

Summary judgment is also appropriate for the independent reason that Brooksbank lacks a signed writing that might satisfy the statute of frauds. An agreement "authorizing . . . any . . . person to purchase or sell real estate" is invalid unless it is "in writing and subscribed by the party to be charged[.]" Cal. Civ. Code § 1624(a)(4). A party may be estopped from invoking the statute of frauds when another party detrimentally relies on an oral agreement by "seriously" changing

5

her position. *Whorton v. Dillingham*, 202 Cal. App. 3d 447, 456 (1988). Brooksbank proceeds solely on the theory that a written contract authorized her to conduct a short sale of real estate in order to satisfy the debt owed to PCG, but the letter she relies upon is not signed by an agent of PCG, Dkt. No. 92-1 at 64, and she has not submitted any other writing that might be a signed contract or memorandum of contract. Brooksbank has also not submitted any evidence that might tend to show she "seriously" changed her position in response to PCG's letter. Rather, on the record before this court, Brooksbank expected to receive certain benefits but did not seriously change her position on the basis of that expectation. PCG is therefore not estopped from invoking the statute of frauds. Brooksbank's breach-of-contract claim fails as a matter of law for lack of any signed writing that might satisfy the statute of frauds and PCG is entitled to summary judgment against Brooksbank on that claim.

The court's conclusion is also supported by Brooksbank's failure to answer the requests for admission she received in May of 2015. Dkt. No. 92-1 at 4, 123. The first page of the requests clearly states the related procedural rules and the deadline within which Brooksbank should respond, Dkt. No. 92-1 at 4, but Brooksbank did not seek advice from the Federal Pro Se Program's attorney and did not respond to the requests for admission. Brooksbank therefore made the requested admissions and the court takes Brooksbank's admissions to be true for the purposes of this case. Fed. R. Civ. P. 36(a)(3); Fed. R. Civ. P. 36(b). Brooksbank admits that her allegations were wrong as to virtually every material issue. Dkt. No. 92-1 at 6-14. For just a few examples: (1) no signed agreement exists regarding the short-sale of the property, Dkt. No. 92-1 at 11; (2) she did not qualify for the program described in the letter because she could not pay property taxes or insurance premiums for the property, *id.* at 12; (3) she did not qualify for the program because the amount of the loan was not greater than the market value of the property, *id.*; (4) no signed agreement to permit a short sale exists, *id.* at 11; and (5) no other agreement "that would forbear" PCG's foreclosure exists, *id.*

## Conclusion

The motion for summary judgment is granted. The court rejects the argument that a borrower cannot raise any claims related to a foreclosure until the borrower tenders all of the

6

1 money that was due on the loan. Nevertheless, there is no genuine issue of material fact on the
2 question of whether a valid and enforceable contract was formed—no valid offer was made and no
3 signed writing satisfies the statute of frauds, so PCG is entitled to judgment as a matter of law.

4 **IT IS SO ORDERED.**

5 Dated: 12/4/15

_____
HOWARD R. LLOYD
United States Magistrate Judge

7